[Cite as *State v. Bondurant*, 2012-Ohio-4912.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | Case No. 11CA25 |
| | : | 11CA27 |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| ZACHARY BONDURANT, | : | |
| | : | |
| and | : | |
| | : | |
| JEFFREY STEVENS, | : | **RELEASED 10/17/12** |
| | : | |
| Defendants-Appellants. | : | |

_____
APPEARANCES:

Eric Allen, The Law Office of Eric J. Allen, LTD, Columbus, Ohio, for appellant Bondurant.

Bryan Scott Hicks, Lebanon, Ohio, for appellant Stevens.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for appellee.
_____
Harsha, J.

{¶1}   In their joint trial, Zachary Bondurant and Jeffrey Stevens were each convicted of engaging in a pattern of corrupt activity, among other offenses.  Initially they argue that there is insufficient evidence to support their convictions for engaging in a pattern of corrupt activity because the statute's monetary threshold applies to individual rather than collective enterprise profit.  And they further argue that because the state failed to show that they individually profited by more than $500, their convictions cannot stand.  However, the legislature intended for Ohio's RICO statute to reduce or eliminate organized criminal group activity by imposing a high level of accountability on those participating in it.  Clearly, the focus of the statute is organized

group conduct.  Accordingly, we conclude that the statute refers to collective profit, i.e. it only requires that the state prove the enterprise as a whole profited more than $500. And because the uncontested evidence makes it clear that the enterprise profited more than $500, there was sufficient evidence to support each of their convictions for engaging in a pattern of corrupt activity.

{¶2}    Bondurant contends that his conviction for trafficking in drugs in a school zone is against the manifest weight of the evidence.  He argues that the detective's testimony concerning the school and its proximity to the drugs sales was inadmissible hearsay and without this testimony, he could not be found guilty of the offense under R.C. 2925.03(A)(1).  However, the court admitted a certified map of the area showing the distance.  Therefore, even without the testimony Bondurant objects to, the trial's outcome would not have changed.  He also argues that a letter admitted into evidence to show the building was a school was inadmissible hearsay because it does not fall within the business record exception.  Nevertheless, the detective also testified that he had personal knowledge the location was a school.  Accordingly, Bondurant's convictions are not against the manifest weight of evidence.

{¶3}    Finally, Bondurant argues that his trial counsel provided ineffective assistance because he did not move to sever his case from his co-defendant Stevens and also failed to object to the detective's alleged inadmissible hearsay.  Because Bondurant failed to provide an analysis of how his counsel's performance fell below a reasonable standard and how he was prejudiced by trying his case with his co-defendant, we deem this argument waived.  And because we have already determined

that the detective's testimony did not prejudice him, we find Bondurant's hearsay related argument to be meritless.

{¶4}   In his second assignment of error Stevens again challenges the language of Ohio's RICO statute.  He argues that the trial court incorrectly sentenced him on a first-degree felony for engaging in a pattern of corrupt activity because R.C. 2923.32(B) elevates his conviction to a first-degree felony only if one of the incidents of corrupt activity was a third-degree felony or higher.  He claims that because his other convictions in this case were only fifth-degree felonies, his conviction for engaging in a pattern of corrupt activity should have been a second-degree felony.  As in his first assignment of error we must interpret the statute to determine the legislative intent. Considering that the legislature intended for Ohio's RICO statute to reduce or eliminate organized criminal group activity by imposing a high level of accountability, we conclude that the statute requires only that the enterprise as a whole engaged in an incident of corrupt activity that was a third-degree felony or higher.  And because Stevens admits that two of the other actors in the enterprise were convicted of second and third-degree felonies, his first-degree felony conviction was justified.  Alternatively, Stevens contends that the verdict form for his conviction was deficient because the jury did not make a finding that an individual in the enterprise committed a first, second or third-degree felony and consequently his conviction could not be elevated to a first-degree felony. However, the jury's verdict form identified the offense level, i.e. a first-degree felony, and therefore the jury did not also have to make a specific finding of an aggravating element to elevate his conviction.

{¶5}    Finally, Stevens challenges his sentence for engaging in a pattern of corrupt activity and claims that the trial court incorrectly determined that a mandatory sentence applied to his conviction.  He argues that R.C. 2929.13(F)(10) requires that the pattern of corrupt activity involve a first-degree felony and the state did not prove that anyone involved in the enterprise was convicted of the necessary offenses.  However, the trial court could have imposed a mandatory sentence under R.C. 2929.13(F)(6) based on Stevens' previous first-degree felony conviction.  Therefore, he has not proven that his sentence is clearly and convincingly contrary to law.  And because trial courts have full discretion to impose a prison sentence within the statutory range, the trial court did not abuse its discretion by sentencing Stevens to nine years for a first-degree felony conviction.

## I. OVERVIEW

{¶6}    Over the course of several months, the Highland County Sheriff's Office and the U.S. 23 Pipeline Task Force investigated drug-related activity involving Zachary Bondurant, Jeffery Stevens and several others.  Following this investigation, Bondurant was charged with one count of engaging in a pattern of corrupt activity, six counts of trafficking in drugs in a school zone and six counts of possession of drugs.  Stevens was charged with one count of engaging in a pattern of corrupt activity, eight counts of trafficking in drugs and eight counts of possession of drugs.  Both Bondurant and Stevens pleaded not guilty and their cases proceeded to a joint trial.

{¶7}    At trial, the state alleged that Bondurant and Stevens were both involved in a "drug ring," headed by Rodger Cassell.  The state theorized that Jeffery Stevens was his "right-hand man" and Bondurant was his "left-hand man."  The state presented

evidence that showed a series of drug transactions involving Stevens and Bondurant to undercover informants. The jury convicted them of all counts and this consolidated appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶8} Bondurant presents three assignments of error:

{¶9} 1. "THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF ENGAGING IN A PATTERN OF CORRUPT ACTIVITY THUS VIOLATING APPELLANT'S RIGHT TO DUE PROCESS PURSUANT TO THE FIFTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT."

{¶10} 2. "THE JUDGMENT OF CONVICTION VIOLATING 2925.03 IS AGAINST THE WEIGHT OF THE EVIDENCE THAT THE ALLEGED DRUG ACTIVITY OCCURRED WITHIN THE VICINITY OF A SCHOOL."

{¶11} 3. "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMDENDMENT TO THE FEDERAL CONSTITUTION, MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMDENDMENT, DUE OT THE APPELLANT'S TRIAL COUNSEL FAILING TO MOVE THE TRIAL COURT FOR AN ORDER SEVERING HIS TRIAL FROM CO-DEFENDANT'S TRIAL."

{¶12} Stevens also presents three assignments of error for our review:

{¶13} 1. "THE TRIAL COURT IMPROPERLY INTERPRETED R.C. § 2923.31 (I)(2)(c) WHEN IT AGGREGATED THE VALUES OF ALL DEFENDANTS IN MEETING THE $500.00 THRESHOLD."

**{¶14}** 2. "THE TRIAL COURT IMPROPERLY CONVICTED OF A FIRST-DEGREE FELONY."

**{¶15}** 3. "THE SENTENCE ON THE ENGAGING IN A PATTERN OF CORRUPT ACTIVITY WAS IMPROPERLY MANDATORY."

III. PATTERN OF CORRUPT ACTIVITY AND THE MONETARY THRESHOLD

**{¶16}** Because Bondurant and Stevens make the same argument we will address their first assignments of error together.  Bondurant and Stevens both argue that there was insufficient evidence to convict them of engaging in a pattern of corrupt activity because the $500 threshold found in R.C. 2923.31(I)(2)(c) must be applied to each defendant individually.  The state responds that the statute should be read to mean the $500 requirement applies to the enterprise as a whole.  To determine which approach is correct, we must construe the statute.

A. Statutory Interpretation

**{¶17}** The interpretation of a statute is a question of law that we review de novo, without deference to the trial court's determination. *In re Adoption of B.M.W.*, 4th Dist. No. 10CA899, 2010-Ohio-5214, ¶ 13.  "'The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute. * * * The court must first look to the plain language of the statute itself to determine the legislative intent. * * * We apply a statute as it is written when its meaning is unambiguous and definite.'" *Id.*, quoting *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9.  If the meaning of a statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary. *Mathews v. Waverly*, 4th Dist. No. 08CA787, 2010-Ohio-347, ¶ 23, citing *State ex rel. Savarese v. Buckeye Local School*

*Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). We may interpret a statute only when it is unclear and ambiguous. *State v. Chappell,* 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 16. A statute is ambiguous if its language is susceptible to more than one reasonable interpretation. *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513, 668 N.E.2d 498 (1996).

{¶18} R.C. 2923.32(A)(1), which is Ohio's RICO statute, states: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." At the time of trial, R.C. 2923.31(I)(2)(c) defined corrupt activity as follows:

> "Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * [c]onduct constituting any * * * violation of section * * * 2925.03 * * * of the Revised Code, * * * when the proceeds of the violation, the payments made in the violation, the amount of a claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars, *or any combination of violations* described in division (I)(2)(c) of this section *when the total proceeds of the combination of violations*, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property illegally possessed, sold, or purchased *in the combination of violations* exceeds five hundred dollars[.]" (Emphasis added.)

{¶19} The phrase "combination of violations" as used in R.C. 2923.31(I)(2)(c) is susceptible to more than one reasonable interpretation and therefore is ambiguous. Reading the statute it is unclear whether the legislature intended the phrase to mean combination of violations involving the enterprise, as the state contends, or an individual defendant's combination of violations, as Bondurant and Stevens claim. Accordingly,

we must interpret its language to determine the legislature's intent.  We do this by considering, among other matters, the circumstances under which the statute was enacted, the legislative history and the consequences of a particular construction.  *See* R.C. 1.49.  Although Stevens points out that R.C. 2901.04(A) requires us to strictly construe criminal statutes against the state, statutes "should not be given an artificially narrow interpretation that would defeat the legislative intent."  *State v. White*, Slip Opinion, 2012-Ohio-2583, ¶ 20.

**{¶20}**  "In general, R.C. 2923.32 is based on the federal RICO statute * * *.  Thus, a review of the purpose behind the federal statute is instructive."  *State v. Schlosser*, 79 Ohio St.3d 329, 332, 681 N.E.2d 911 (1997).  In enacting the federal RICO Act, Congress stated that "'the purpose of this Act [is] to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.'"  *Id.*, quoting Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922, reprinted in 1970 U.S.Code Cong. & Adm. News at 1073.

**{¶21}**  The Supreme Court of Ohio has noted that there is "little legislative history" about the enactment of Ohio's RICO statute, however comments by the Senate sponsor, "indicate an intent to impose the greatest level of accountability * * *."  *Schlosser* at 333.

B. Analysis

**{¶22}** When Stevens and Bondurant initially raised this argument at trial in Crim.R. 29 motions the state clarified that it attributed $250 in the alleged drug sales to Stevens and $460 to Bondurant, but also maintained that it recovered over $35,000 from a search of Cassell's property. After researching the issue, the court concluded that the $500 threshold applied to the enterprise as a whole and overruled the motion. The court theorized that "if an enterprise accumulates a million dollars worth of transactions at four hundred dollars a pop under the theory * * * that the defendants are raising, then that person could never be guilty of corrupt activity as long as he had a number of people, none of whom had more than five hundred dollars in total sales. And that really doesn't make any sense."

**{¶23}** Although we review this claim without deference to the trial court's decision, we agree with its assessment. As the trial court stated, it would not make sense to let individuals escape punishment because they personally never dealt in a transaction over $500, although the enterprise they were involved in profited significantly. Considering that Ohio's RICO statute is meant to impose heightened accountability for organized criminal activity involving more than two people, *see* R.C. 2923.31(C), we interpret the statute to require only that the enterprise as a whole profited more than $500. Because the focus of the statute is upon prohibiting group conduct, it only makes sense that the prohibited amount would also focus on the group's "success," not that of each individual.

**{¶24}** And because Bondurant and Stevens do not dispute that the enterprise in this case profited more than $500, there was sufficient evidence to convict them each of engaging in a pattern of corrupt activity and we overrule their first assignments of error.

## IV. MANIFEST WEIGHT OF THE EVIDENCE

**{¶25}** Addressing Bondurant's remaining assignments of error, he next argues that his convictions under R.C. 2925.03 for trafficking in drugs in a school zone are against the manifest weight of evidence. Specifically, he claims that Detective Denny Kirk's testimony regarding the proximity of the school to the drug sales was inadmissible hearsay. He also argues that a letter admitted into evidence by the state verifying the school was operational on the dates in question was not a business record subject to a hearsay exception. And without this evidence, he contends the state failed to prove its case.

### A. Legal Standard

**{¶26}** When considering whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and consider the creditability of witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541(1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

**{¶27}** "If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence." *State v. Puckett*, 4th Dist. No. 10CA3153, 2010-Ohio-6597, ¶ 33, citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.

Thus, we will exercise our discretionary power to grant a new trial "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541(1997), quoting *Martin* at 175.

### B. Statutory Requirements

**{¶28}** Bondurant was convicted of trafficking in drugs in a school zone under R.C. 2925.03(A)(1), which states "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance." Section (C)(2)(b) of the statute further states "[i]f the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule III, IV, or V, whoever violates division (A) of this section is guilty of trafficking in drugs. The penalty for the offense shall be determined as follows * * * if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, aggravated trafficking in drugs is a felony of the third-degree * * *."

**{¶29}** "An offense is 'committed in the vicinity of a school' if the offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises * * *." R.C. 2925.01(P). A "school premises" is a "parcel of real property on which any school is situated, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted on the premises at the time a criminal offense is committed." R.C. 2925.01(R). A "'[s]chool' means any school operated by a board of education, any community school established under Chapter 3314. of the Revised Code, or any nonpublic school for which the state board of education prescribes minimum standards under section 3301.07 of the Revised Code, whether or not any instruction, extracurricular activities, or training

provided by the school is being conducted at the time a criminal offense is committed."
R.C. 2925.01(Q).

{¶30} The provisions of R.C. 2925.03 "clearly indicate that the Ohio legislature intended to punish more severely those who engage in the sale of illegal drugs in the vicinity of our schools and our children." *State v. Manley*, 71 Ohio St.3d 342, 346, 643 N.E.2d 1107 (1994). "[I]n order to convict a defendant under the school specification, the state must prove beyond a reasonable doubt that the drug transaction occurred within the specified distance of a school. The state has the burden of establishing all material elements of a crime by proof beyond a reasonable doubt. That requirement also applies in cases involving the imposition of an enhanced punishment upon proof of some additional element." (Citations omitted.) *Id.*

### C. Plain Error

{¶31} Our review of the record shows that Bondurant did not object to Detective Kirk's testimony on the basis of hearsay. He also failed to object to the use of the letter during his testimony and its admission into evidence. Because Bondurant did not object to these alleged errors at trial, he has waived all but plain error on appeal. *See State v. Shahan*, 4th Dist. No. 02CA63, 2003-Ohio-6945, ¶ 9.

{¶32} "Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court." *State v. Phillips*, 74 Ohio St.3d 72, 83, 656 N.E.2d 643 (1995). We take notice of plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Plain error does not exist unless it

can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990). After reviewing the record, we cannot say that the outcome of trial would have clearly been different without Detective Kirk's testimony concerning the proximity of the school to the drug sales and admission of the letter.

{¶33} Bondurant claims that Detective Kirk's testimony that "the GIS office told him [the school] was 477 feet" from the drug sales was inadmissible hearsay. He also asserts that a letter sent from Highland County Community Action Organization was inadmissible hearsay not subject to the business record exception because there was no foundation laid by the detective to admit the letter.

{¶34} However, without objection from either defendant, the state offered into evidence a certified map from the Highland County GIS. This map shows the location of both the Head Start pre-school and Bondurant's apartment where the drug sales took place. The map includes a computer generated line labeling the distance between the two locations as 477 feet. In addition, the map also includes a scale. A certified copy of a plat map is a public record that is admissible as a hearsay exception under Evid.R. 803(8). *State v. Sloan*, 8th Dist. No. 79832, 2002-Ohio-2669, ¶ 32. Furthermore, under Evid.R. 902 a certified copy of the map is self-authenticating. *Id.* Therefore, even without Detective Kirk's testimony, there was substantial evidence presented by the state to show that the drug sales involving Bondurant occurred within 1000 feet from the Head Start pre-school.

{¶35} Finally, Detective Kirk testified without objection that he was familiar with the Head Start school referred to in the letter and had personal knowledge that the

school was operational.  He testified that "[o]ver the years of investigating cases I've been at the facility and observed it to be a Head Start; and then when I contacted Community Action, they verified that it does continue to be a facility."  He also testified that the Head Start school was operational from January to March 2011 and "[a]ccording to the Community Action, it was a pre-school at that time."  Thus, without considering the letter from the Highland County Community Action Organization, Detective Kirk's testimony alone was sufficient to establish that the Head Start facility was a school under R.C. 2925.01(Q).  *See State v. Manley*, 71 Ohio St.3d 342, 348, 643 N.E.2d 1107 (1994).   Especially considering that this testimony went unchallenged by either defendant at trial. *Id.*

**{¶36}**  Thus, even if we reject the evidence Bondurant objects to, we cannot say the result of his trial clearly would have been different.  Because the trial court did not commit plain error, we overrule his second assignment of error.

V. INEFFECTIVE ASSISTANCE OF COUNSEL

**{¶37}**  Finally, in his third assignment of error Bondurant claims that his trial counsel was ineffective because he failed to file a motion to sever his trial from his co-defendant, Stevens.

A. Legal Standard

**{¶38}**  To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation; and (2) prejudice, meaning that there is a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052,

80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.  We also "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

## B. Motion to Sever

**{¶39}**  App.R. 16(A)(7) requires the appellant to "include in its brief, under the headings and in the order indicated, all of the following * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.  The argument may be preceded by a summary."

**{¶40}**  Although, Bondurant provided much law in his brief regarding ineffective assistance of counsel and joinder, he failed to argue how his counsel's performance was deficient or how he was prejudiced by his performance.  Rather, the only argument that Bondurant offers is that he "not only has to fight the charges against him, but he must also fight the charges against Jeffery Stevens and Rodger Cassell as well."

**{¶41}**  "It would be inappropriate for us to create an argument on the [appellant's] behalf."  *In re A.Z.*, 4th Dist. No. 11CA3, 2011-Ohio- 6739, ¶ 19.  "'If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out. * * * It is not the function of this court to construct a foundation for [an appellant's] claims [.]'" *Id.*

at ¶ 18, quoting *Coleman v. Davis*, 4th Dist. No. 10CA5, 2011–Ohio–506, ¶ 13. "In other words, '[i]t is not * * * our duty to create an argument where none is made.'" *In re A.Z.* at ¶ 18, quoting *Deutsche Bank Natl. Trust Co. v. Taylor,* 9th Dist. No. 25281, 2011-Ohio-435, ¶ 7. Therefore, we conclude Bondurant has not overcome the strong presumption that counsel's performance was reasonably professional.

### C. Failure to Object

**{¶42}** Bondurant also argues that his trial counsel provided ineffective assistance because he failed to object to Detective Kirk's testimony that allegedly contained inadmissible hearsay. And he also claims that his trial counsel was ineffective for not objecting to the admission of the letter from the Highland County Community Action Organization. However, we have already determined that even without Detective Kirk's testimony about the GIS and the letter, there was still sufficient evidence to convict him of trafficking in drugs in a school zone. Therefore, even if we assume arguendo that his trial counsel's performance was deficient by failing to object, Bondurant cannot prove he was prejudiced. Accordingly, we overrule his third assignment of error.

### VI. ENGAGING IN A PATTERN OF CORRUPT ACTIVTY AND OFFENSE LEVEL

**{¶43}** Turning to Stevens' remaining claims, in his second assignment of error he again challenges the language of Ohio's RICO statute. He argues that the trial court incorrectly sentenced him on a first-degree felony for engaging in a pattern of corrupt activity. Stevens points out that under R.C. 2923.32(B) engaging in a corrupt activity is only elevated to a first-degree felony if one of the "incidents of corrupt activity" was a third-degree felony or higher. Because his other convictions in this case were only fifth-

degree felonies, he claims his conviction for engaging in a pattern of corrupt activity should have been a second-degree felony.   The state contends that the phrase "incidents of corrupt activity" refers to the enterprise as a whole, rather than the individual defendant; and because at least one of Stevens' co-defendants was convicted of a third-degree felony, his first-degree felony conviction was proper.   Thus, as in his first assignment of error, we must first examine the statute to determine which approach is correct.

### A. Law and Analysis

{¶44}  Stevens was convicted of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1).  R.C. 2923.32(B)(1) states, "[w]hoever violates this section is guilty of engaging in a pattern of corrupt activity.  Except as otherwise provided in this division, engaging in corrupt activity is a felony of the second degree. Except as otherwise provided in this division, if at least one of the incidents of corrupt activity is a felony of the first, second, or third degree, aggravated murder, or murder  * * * engaging in a pattern of corrupt activity is a felony of the first degree."

{¶45}  We find that the phrase "incidents of corrupt activity" as used in R.C. 2923.32(B)(1) is susceptible to more than one reasonable interpretation and therefore is ambiguous.  It is unclear from the statute's plain language if the legislature intended the phrase to refer to an individual defendant's incidents of corrupt activity, as Stevens claims, or the enterprise's corrupt activity, as the state argues.  Therefore, we must interpret the statute to determine the legislature's intent.

{¶46}  As we stated in Section III(A), the legislature intended for Ohio's RICO statute to impose the greatest level of accountability for organized criminal activity.

Thus, consistent with our earlier analysis, we conclude that the phrase "incidents of corrupt activity" as used in Ohio's RICO statute refers to the enterprise as a whole. Therefore, a defendant may be convicted of a first-degree felony if one of the enterprise's incidents of corrupt activity constituted a felony of the first, second, or third-degree. *But see State v. Chamblin*, 4th Dist. No.02CA753, 2004-Ohio-2252, ¶ 26.

{¶47} In *Chamblin* we previously stated that to sustain a conviction under R.C. 2923.32 for a first-degree felony *the appellant* must have been convicted of a first, second or third degree felony that was part of the pattern of corrupt activity. *Id.* Because we determined that Chamblin's conviction for the predicate third-degree felony offense could not stand, we also concluded that he could not be convicted of a first-degree felony under R.C. 2923.32(B). *Id.* However, *Chamblin* did not involve the issue presented here, i.e. whether the enhancement is available based upon any member of the enterprise having the requisite conviction.

{¶48} Here, Stevens does not dispute that the other members of the enterprise were convicted of the necessary felonies. He concedes that two actors in the enterprise testified at trial that they were convicted of second and third-degree felonies. Thus, under our interpretation of R.C. 2923.32(B)(1) he was properly convicted of a first-degree felony for engaging in a pattern of corrupt activity.[1]

### B. Verdict Forms

{¶49} Alternatively, Stevens also claims that the jury's verdict form for his conviction was deficient under the standard set forth in *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735. He urges us to remand his case for resentencing

---

[1] Stevens' argument only focuses on statutory construction and not a constitutional violation.

because the jury failed to make a specific finding that one of the "incidents of corrupt activity" was a first, second or third-degree felony.

**{¶50}** However, our review of the record shows that Stevens did not object to the verdict forms at trial. Nevertheless, "the Supreme Court of Ohio has recognized error, even in the absence of an objection at trial, when a verdict form fails to comply with R.C. 2945.75(A)(2)." *Portsmouth v. Wrage,* 4th Dist. No. 08CA3237, 2009-Ohio-3390, ¶ 42, citing *Pelfrey*.

**{¶51}** R.C. 2945.75(A)(2) provides: "When the presence of one or more additional elements makes an offense one of more serious degree: * * * A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." And "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *Pelfrey* at syllabus.

**{¶52}** "R.C. 2945.75(A)(2) and *Pelfrey* apply only to criminal offenses with multiple degrees of seriousness. For example, in *Pelfrey,* the defendant was found guilty of tampering with records in violation of R.C. 2913.42. Depending on the seriousness of the conduct, tampering with records under R.C. 2913.42 may be a misdemeanor of the first degree, a felony of the fifth degree, a felony of the fourth degree, or a felony of the third degree. See RC. 2913.42(B)(1)-(4). The verdict form in *Pelfrey* did not list the aggravating element (tampering with government records) or the

degree of the offense (a third degree felony pursuant to R.C. 2913.42(B)(4)). *Pelfrey* at

¶ 13." *State v. Norman*, 4th Dist. Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, ¶ 61.

**{¶53}** Here, a conviction under R.C. 2923.32 for engaging in a pattern of corrupt

activity has multiple degrees of seriousness. Depending on the seriousness of the

incidents of corrupt activity, it can be either a first or second-degree felony. R.C.

2923.32(B). Thus, the jury's verdict form must comply with R.C. 2945.75(A)(2) and

*Pelfrey*.

**{¶54}** Although Stevens claims that the court itself enhanced his conviction to a

first-degree felony, this is not the case. The jury's verdict form clearly stated the degree

of the offense. The form states, "[w]e, the jury, having been duly impaneled and sworn,

find the defendant, Jeffery Stevens guilty of Engaging in a Pattern of Corrupt Activity, *a*

*first degree felony* as he stands charged in Count 1 of the indictment." (Emphasis

added.) Because the form clearly stated that the jury found Stevens guilty of a first-

degree felony, it did not also have to state the jury made a specific finding that one of

the incidents of corrupt activity was a first, second or third-degree felony. To comply

with R.C. 2945.75(A)(2) and *Pelfrey,* the verdict form need only state either the degree

of the offense or that the jury found an aggravating element present. The verdict form

satisfied this requirement. Therefore, we overrule Stevens' second assignment of error.

## VII. SENTENCING

**{¶55}** Finally in his third assignment of error Stevens challenges his sentence for

engaging in a pattern of corrupt activity. Stevens claims that the trial court incorrectly

determined that a mandatory sentence applied to his conviction. Specifically, he argues

before imposing a mandatory sentence, the statute requires that the pattern of corrupt

activity involve a first-degree felony; here the state did not prove that anyone involved in the enterprise was convicted of a first-degree felony. Therefore, he claims the trial court improperly sentenced him to a mandatory term under R.C. 2929.13(F)(10).

### A. Standard of Review

{¶56} "[A]ppellate courts must apply a two-step approach when reviewing felony sentences. First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 26.

### B. Law and Analysis

{¶57} The jury found Stevens guilty of engaging in a pattern of corrupt activity, a first-degree felony, and the trial court sentenced him to nine years imprisonment. At sentencing the court stated, "the Defendants have been convicted of engaging in a pattern of corrupt activity, a first-degree felony. I believe that there's a mandatory sentence. * * * And three to ten is the range of sentence that there is." The court also stated: "So as to Defendant Stevens, the potential sentence on [Engaging in a Pattern of Corrupt Activity] is actual three, mandatory actual three to ten years." The state and Stevens' trial attorney both agreed with the court's statements. Although the court never orally explained the basis for its conclusion that the sentence was mandatory, nevertheless, the judgment entry of conviction indicates that the court found "that a mandatory prison term is required by 2929.13(F) ORC."

**{¶58}** R.C. 2929.13(F) requires the sentencing court to impose a mandatory prison term for certain serious offenses and limits the court's discretion to reduce that term, except in certain enumerated circumstances. *State v. Johnson*, 116 Ohio St.3d 541, 2008-Ohio-69, 880 N.E.2d 896, ¶¶16, 17.  The statute states: "Notwithstanding divisions (A) to (E) of this section, the court shall impose a prison term or terms under sections 2929.02 to 2929.06, section 2929.14, section 2929.142, or section 2971.03 of the Revised Code and  * * *shall not reduce the term * * * for any of the following offenses * * * (10) Corrupt activity in violation of section 2923.32 of the Revised Code when the most serious offense in the pattern of corrupt activity that is the basis of the offense is a felony of the first degree."

**{¶59}** Although Stevens argues that this is the only subsection that applies to his case, our review indicates otherwise.  R.C. 2929.13(F)(6) also requires a mandatory sentence for:  "Any offense that is a first or second degree felony and that is not set forth in division (F)(1), (2), (3), or (4) of this section, if the offender previously was convicted of or pleaded guilty to * * * any first or second degree felony * * *[.]"  At trial, Stevens testified that he was previously convicted of complicity to aggravated robbery. And because complicity to aggravated robbery is a felony of the first-degree, *see* R.C. 2911.01(C) and R.C. 2923.03(F), the trial court could have based its finding that Stevens' conviction required a mandatory sentence under R.C. 2929.13(F)(6).  In fact, before announcing Stevens' sentence the court noted that Stevens testified that he had been convicted of complicity to aggravated robbery, in addition to several other offenses.  In light of the fact that we review judgments, not the rationale behind them, we cannot say the courts sentence was clearly and convincing contrary to law.

{¶60} Finally, trial courts have full discretion to impose a prison sentence within the statutory range.  At the time of his sentencing R.C. 29291.4(A)(1) provided that a first-degree felony was punishable by a term of three to ten years.  Accordingly, the trial court did not abuse its discretion by sentencing Stevens to nine years for a first-degree felony conviction.  We overrule Stevens' third assignment of error.

## VI. CONCLUSION

{¶61} In conclusion, we overrule each of Bondurant's assignments of error and affirm the judgment of the trial court in his case.  We also overrule each of Stevens' assignments of error and affirm the judgment of the trial court in his case.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. & McFarland, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
William H. Harsha, Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**