*260 O’Connor, C J.,
dissenting.
{¶ 51} We are not presented with an 18-year-old high school senior who was arrested for selling a dime bag of marijuana and prosecuted for a violation of Ohio’s Racketeer-Influenced and Corrupt Organizations (“RICO”) statutes based on some tenuous tie between his product and a multibillion-dollar Colombian drug cartel.[3] Quite the contrary.
{¶ 52} We are presented with two men, each between 30 and 40 years old, who repeatedly sold heroin, crack cocaine, and powder cocaine to a number of people in a number of counties over a number of months.
{¶ 53} As the appellate court recognized, the state’s theory in this case is that Jeffrey Stevens was the right-hand man, and Zachary Bondurant was the left-hand man, of Rodger Cassell, the purported leader of their criminal enterprise. State v. Bondurant, 2012-Ohio-4912, 982 N.E.2d 1261, ¶ 7 (4th Dist.). And that enterprise trafficked drugs in school zones and impoverished areas, while stashing away tens of thousands of dollars in Cassell’s vehicles.
{¶ 54} The suggestion that Bondurant and Stevens are anything less than professional purveyors of some of the most destructive drugs in society is, at best, disingenuous.
{¶ 55} But my quarrel is not simply over the lead opinion’s mischaracterization of the nature of this appeal. It is with the lead opinion’s improper analysis of the criminal statute at issue, R.C. 2923.31(I)(2)(c), and its conclusion that the statute is ambiguous and, under the rule of lenity, that it must be construed in favor of the appellants.
{¶ 56} The statute is unambiguous, both in wording and in context. The convictions of Bondurant and Stevens should be affirmed.

Analysis

{¶ 57} The Organized Crime Control Act of 1970, Pub.L. No. 91-452, 84 Stat. 941, codified as 18 U.S.C. 1961 et seq., was enacted after Congress found that organized crime in the United States, including drug trafficking, was “ ‘a highly sophisticated, diversified, and widespread activity.’ ” State v. Schlosser, 79 Ohio St.3d 329, 332, 681 N.E.2d 911 (1997), quoting the Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922, reprinted in 1970 U.S.Code Cong. & Adm. News at 1073. The federal law, known as the Racketeer *261 Influenced and Corrupt Organizations Act, was enacted to “ ‘seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.’ ” Id.
{¶ 58} To effectuate its goals, the law’s sponsors eschewed precise wording. Instead, they used commodious language to broadly encompass crimes committed by an enterprise. See H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 246, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). And we must be mindful that Congress provided specifically that the federal RICO statute be liberally construed to effectuate its remedial purposes. United, States v. Sutton, 642 F.2d 1001, 1008 (6th Cir.1980) (en banc), citing Pub.L. No. 91-452, Title IX, Section 904(a), 84 Stat. 947 (1970).
{¶ 59} Ohio, like many states, enacted its own version of RICO through the adoption of R.C. 2923.31 et seq. R.C. 2923.31 and 2923.32 are both a part of what is commonly referred to as Ohio’s RICO statute. See State v. Theisler, 11th Dist. Trumbull No. 2005-T-0106, 2007-Ohio-213, 2007 WL 136102, ¶ 30; State v. Thrower, 62 Ohio App.3d 359, 369, 575 N.E.2d 863 (9th Dist.1989). We look to federal law to interpret Ohio’s RICO statute. U.S. Demolition & Contracting, Inc. v. O’Rourke Constr. Co., 94 Ohio App.3d 75, 83, 640 N.E.2d 235 (8th Dist.1994).
{¶ 60} R.C. 2923.32(A)(1) provides, “No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.” In the version of R.C. 2923.31 in effect at the times relevant here, R.C. 2923.31(I)(2)(c) defined “corrupt activity” as “engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * conduct constituting” certain predicate offenses
when the proceeds of the violation, the payments made in the violation, the amount of a claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars [now one thousand dollars], or any combination of violations described in division (I)(2)(c) of this section when the total proceeds of the combination of violations, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property *262 illegally possessed, sold, or purchased in the combination of violations exceeds five hundred dollars [now one thousand dollars].
(Emphasis added.)
{¶ 61} At the time of its enactment, Ohio’s RICO Act was described by one of its sponsors as “‘the toughest and most comprehensive [RICO] Act in the nation.’ ” Schlosser, 79 Ohio St.3d at 333, 681 N.E.2d 911, quoting 57 Ohio Report No. 117, Gongwer News Serv. 3 (June 18, 1985). It is nonsensical to think that a statute that was designed to be one of the most effective anti-crime laws in existence would use limiting terms, rather than expansive ones, in defining and proscribing criminal conduct.
{¶ 62} There is no doubt that criminal statutes must be strictly construed against the state in certain situations. R.C. 2901.04(A). But the rule of lenity is a statutory-construction device that “only serves as an aid for resolving an ambiguity; it is not used to beget one.” United States v. Turkette, 452 U.S. 576, 587, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), fn. 10. Criminal statutes should not be given an artificially narrow interpretation that would defeat the General Assembly’s apparent intent in enacting the statute. State v. White, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 20, citing In re Clemons, 168 Ohio St. 83, 87-88, 151 N.E.2d 553 (1958). The lead opinion does just that.
{¶ 63} As we recently reaffirmed, unanimously, Ohio’s RICO statute is focused on the criminal enterprise, not on the individuals that comprise the enterprise. State v. Miranda, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 14. The statutory language at issue here plainly and unambiguously reflects that intent.
{¶ 64} “Combination” means many things, and its definitions are clear and relevant here: “the act of combining or the state of being combined,” “a number of things combined,” “something formed by combining,” “an alliance of persons or parties,” and “a group thus formed.” The Random House Dictionary of the English Language 408 (2d Ed.1987). See also Rush Beverage Co., Inc. v. S. Beach Beverage Co., Inc., N.D.Ill. No. 01 C 5684, 2002 WL 31749188, *8 (Dec. 6, 2002), quoting Webster’s Third New International Dictionary 452 (1986) (holding that the phrase “in combination with” is not ambiguous and not susceptible of more than one meaning, in that “combination” is defined as “ ‘the result or product of combining[;] a union or aggregate made by combining one thing with another,’ ” and in that “combine” is defined as “ ‘to bring into close relationship’ ”). And Black’s Law Dictionary provides a succinct and particularly apropos definition for purposes of this appeal: a “combination” means “[a]n alliance of individuals or corporations working together to accomplish a common (usu. economic) goal.” Id. at 302 (9th Ed.2009). The General Assembly’s repeated use of the word “combination” clearly and unequivocally means a *263 combination of violations, which in this case is the combination of the violations of Ohio’s drug laws committed by all those who were involved in the criminal enterprise.
Anneka P. Collins, Highland County Prosecuting Attorney, for appellee.
{¶ 65} The lead opinion’s conclusion that the General Assembly’s use of the term “combination” in R.C. 2923.31(1)(2)(c) is ambiguous lacks any legal authority and strains credulity, common sense, and middle-school vocabulary lessons. The only reported case in Ohio to suggest that any of the provisions of R.C. 2923.31(1) (including its use of the word “combination”) is ambiguous is the appellate court’s decision in the case before us. Not a single court has adopted its holding on ambiguity since it was issued.
{¶ 66} As Justice White wrote in Turkette:
“The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.” Callanan v. United States, 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961) (footnote omitted). There being no ambiguity in the RICO provisions at issue here, the rule of lenity does not come into play. See United States v. Moore, 423 U.S. 122, 145, 96 S.Ct. 335, 346, 46 L.Ed.2d 333 (1975), quoting United States v. Brown, 333 U.S. 18, 25-26, 68 S.Ct. 376, 379-380, 92 L.Ed. 442 (1948) (“ ‘The canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. * * * Nor does it demand that a statute be given the “narrowest meaning”; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers’ ”); see also Lewis v. United States, 445 U.S. 55, 60-61, 100 S.Ct. 915, 918-919, 63 L.Ed.2d 198 (1980).
452 U.S. at 587,101 S.Ct. 2524, 69 L.Ed.2d 246, fn. 10.
{¶ 67} The lead opinion’s analysis corrupts the court’s teachings on the rule of lenity, as well as the context of Ohio’s RICO statute and the plain meaning of the words used in the statute. And the lead opinion’s conclusion gives rise to an undue, unfair, and unwelcome ambiguity in a statute that affords important protections to Ohioans.
{¶ 68} I strongly dissent.
*264 Bryan Scott Hicks, for appellant Jeffrey Stevens in case No. 2012-2003.
Timothy Young, Ohio Public Defender, and E. Kelly Mihocik, Assistant Public Defender, for appellant Zachary Bondurant in case No. 2012-2006.

. Any intimation by the lead opinion that the sweep of Ohio’s RICO statutory scheme is so broad that it will lead to unfettered prosecutions of naive adolescents is unsupported. If the legislative scheme permitted a genuine constitutional affront of that type based on such an attenuated theory for engaging in a pattern of corrupt activity, this court would undoubtedly remedy it. See State v. Young, 62 Ohio St.2d 370, 406 N.E.2d 499 (1980), syllabus (holding Ohio’s predecessor RICO statute unconstitutional, on void-for-vagueness grounds).