THE STATE OF OHIO, APPELLEE, *v.* STEVENS, APPELLANT.

THE STATE OF OHIO, APPELLEE, *v.* BONDURANT, APPELLANT.

[Cite as *State v. Stevens,* **139 Ohio St.3d 247, 2014-Ohio-1932.**]

*Criminal law—Engaging in a pattern of corrupt activity—R.C. 2923.31(I)(2)(c)*
   *construed.*

(Nos. 2012-2003 and 2012-2006—Submitted September 10, 2013—Decided
May 13, 2014.)

APPEALS from the Court of Appeals for Highland County,
Nos. 11CA25 and 11CA27, 2012-Ohio-4912.

_____

**O'NEILL, J.**

{¶ 1} Appellants, Zachary Bondurant and Jeffrey Stevens, were involved in the sale of drugs in Highland County from late 2010 until early 2011. Although the total amount of money involved in the sales attributed to each appellant was $460 and $250 respectively, they were both charged with engaging in a pattern of corrupt activity under R.C. 2923.32. Bondurant received a mandatory sentence of seven years for violating that statute, plus additional time for other drug-related convictions. Stevens received a mandatory sentence of nine years for violating that statute, plus additional time for other drug-related convictions.

{¶ 2} R.C. 2923.32 and associated statutes set forth Ohio's version of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961-1968, commonly referred to as the "RICO Act." The initial purpose of the federal RICO Act, enacted in 1970, was stated to be the "elimination of the infiltration of

organized crime and racketeering into legitimate organizations operating in interstate commerce." S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969).

{¶ 3} Under Ohio's RICO statutes, there are two reasonable interpretations regarding the monetary threshold that must be met in order to obtain a RICO conviction under R.C. 2923.32. The question before this court is whether the threshold monetary amount stated in R.C. 2923.31(I)(2)(c) ($500 as relevant to appellants' case)[1] applies to the enterprise as a whole, or applies to the individual actions of a person who is part of the enterprise. The Fourth District Court of Appeals concluded in this case that R.C. 2923.31(I)(2)(c) is ambiguous and that it is susceptible of two reasonable interpretations. We agree. However, having found the statute to be ambiguous, the Fourth District then incorrectly decided that the legislature likely intended to have the minimum threshold apply to the enterprise as a whole. Under the law in Ohio, this was an incorrect result.

{¶ 4} It is a longstanding principle of Ohio law that criminal statutes that are found to be ambiguous are to be construed in favor of the defendant. Accordingly, since we find that the Ohio RICO statute applicable here is ambiguous in that the interpretation that favors the defendants is reasonable, we must interpret the statute in favor of appellants. That means that the minimum threshold found in R.C. 2923.31(I)(2)(c) must be applied to each individual within the enterprise and not to the enterprise as a whole. In essence, unless a person is involved in transactions on behalf of the enterprise in an amount equal to or greater than the statutory threshold, that person is not susceptible to being prosecuted under the Ohio RICO statutes. The person can still be prosecuted for the underlying drug charges, as the defendants were in this case, but the

---

1. R.C. 2923.31(I)(2)(c) has since been amended to change the threshold amount from $500 to $1,000. 2011 Am.Sub.H.B. No. 86. Our analysis in this case concerns the nature of the threshold and is not dependent on the statutory amount, so our conclusion applies with equal force to the current version of the statute.

defendants' first-degree felony convictions under Ohio's RICO statutes must be overturned.

**Facts and Procedural History**

{¶ 5} Over the course of several months, the Highland County Sheriff's Department and the U.S. 23 Pipeline Task Force engaged in a prolonged investigation into drug activity centered in and around Highland County. That investigation revealed what the prosecution referred to as a "drug ring" that was headed by a man named Rodger Cassell and that included both Stevens and Bondurant. There were allegedly a total of nine individuals involved. Both Stevens and Bondurant were charged with engaging in a pattern of corrupt activity. Stevens was also charged with eight counts of trafficking in drugs and eight counts of possession of drugs. Bondurant was charged with six counts of possession of drugs and six counts of trafficking in drugs in a school zone. Both appellants entered pleas of not guilty, and a joint jury trial proceeded against both men.

{¶ 6} After the state presented its case, both men moved for acquittals under Crim.R. 29 as to the corrupt-activity charges, arguing that the $500 threshold set forth in former R.C. 2923.31(I)(2)(c) had not been satisfied as to either of them individually. The trial court overruled appellants' motions, reasoning that "it would not make sense" to let individuals escape punishment for engaging in a pattern of corrupt activity because they personally never dealt in transactions involving total sales of over $500, although the enterprise they were involved in profited significantly. The jury returned guilty verdicts on all charges against both appellants. For purposes of this appeal, we are concerned only with the convictions for engaging in a pattern of corrupt activity under Ohio's RICO Act.

{¶ 7} Appellants filed separate appeals in the Fourth District Court of Appeals. The key issue raised by both men was a challenge to their convictions

under Ohio's RICO statutes. The principal argument that each made was that the state failed to offer evidence demonstrating that either of them was involved in drug sales that totaled $500 or more. The state in essence argued in response that it was sufficient to prove that the total amount of drug sales attributable to the enterprise as a whole was over $500. The state at trial had produced evidence that the total sales of the enterprise were well over $35,000. However, the evidence of actual sales offered by the state attributable to Stevens had amounted to about $250, and the state's evidence offered with respect to Bondurant had attributed $460 worth of drug sales to him. Thus, neither appellant, during the time period covered by the extended investigation, was shown to have engaged in total drug sales of $500 or more.

{¶ 8} After the court of appeals affirmed the convictions and sentences in a consolidated opinion, we accepted each appellant's discretionary appeal. 134 Ohio St.3d 1467, 2013-Ohio-553, 983 N.E.2d 367.

**Analysis**

{¶ 9} R.C. 2923.32(A)(1) provides: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."

{¶ 10} The key focus of our analysis is R.C. 2923.31(I)(2)(c), which at the time applicable to this case defined "corrupt activity" as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * conduct constituting" certain predicate offenses

> when the proceeds of the violation, the payments made in the violation, the amount of a claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally

4

possessed, sold, or purchased in the violation exceeds five hundred dollars [now one thousand dollars], *or any combination of violations* described in division (I)(2)(c) of this section *when the total proceeds of the combination of violations*, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property illegally possessed, sold, or purchased *in the combination of violations exceeds five hundred dollars* [now one thousand dollars].

(Emphasis added.)

{¶ 11} The legislature's continued use of the phrase "combination of violations" in this statute is ambiguous as it could be read to apply to more than one violation for an individual, or it could be read to refer to the total violations of the entire enterprise. Within the context of this statute, it is susceptible of more than one reasonable interpretation. *See State v. Jordan*, 89 Ohio St.3d 488, 491-492, 733 N.E.2d 601 (2000). This ambiguity is the crux of this case.

{¶ 12} We are guided by the rules of statutory interpretation as codified in the rule of lenity, R.C. 2901.04(A). There, the legislature has made it clear that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." This court has stated that the rule of lenity requires that a court "not interpret a criminal statute so as to increase the penalty it imposes on a defendant if the intended scope of the statute is ambiguous." *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 38. Additionally, the Supreme Court of the United States has stated that in accordance with the principles of lenity, an ambiguous criminal statute must be construed in favor of the defendant. *Rewis v. United*

*States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). *Accord United States v. Santos*, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). Yet, the Fourth District in this case did exactly the opposite. Instead of construing this ambiguous statute in favor of the reasonable construction offered by the defendants, it construed it in favor of the state. After determining that the statute was ambiguous, the appellate court went on to determine the legislature's intent in drafting the statute. It concluded that the Ohio RICO Act was applicable to both appellants even though neither one was involved in total sales amounting to $500 or more. The court concluded that the legislature must have intended for the $500 threshold to apply to the group rather than individuals within the group because the focus of the RICO statutes is on group conduct and group success. 2012-Ohio-4912, 982 N.E.2d 1261, ¶ 23 (4th Dist.).

{¶ 13} However, the Fourth District Court of Appeals' decision to evaluate the legislative intent in drafting R.C. 2923.31(I)(2)(c) was contrary to established law. Once it determined that the statute is ambiguous in that the appellants' proposed interpretation is reasonable, the analysis should have ended and the ambiguity should have been construed in favor of appellants.

{¶ 14} Appellants' proposed interpretation is clearly reasonable. R.C. 2923.32(A)(1) uses the singular word "person" to refer to one who engages in a pattern of corrupt activity. And there is nothing in R.C. 2923.31(I)(2)(c) that definitively overcomes the carrying over of the individual connotation of that word into the statement of the threshold amount contained within the definition of "corrupt activity." Hence, the threshold set forth in Ohio's RICO Act should have been applied to each individual rather than to the enterprise as a whole.

{¶ 15} It seems doubtful that the legislature intended to hold even small-time drug dealers liable for a first-degree felony through the operation of R.C. 2923.32(A)(1) and 2923.31(I)(2)(c). Should an 18-year-old high school senior who sells $10 worth of marijuana to classmates be prosecuted as a first-degree

felon under the Ohio RICO Act merely because the drugs could be traced back to a multibillion-dollar Colombian drug cartel? How would this put a damper on organized crime in Ohio? That student is acting as an individual, and his conviction and punishment would have no discernable effect on the fight against organized crime. The RICO laws were enacted to punish the enterprise and those controlling the enterprise, not the petty criminals. To that end, it is reasonable to deduce that the intent underlying R.C. 2923.31(I)(2)(c) is to provide a threshold amount that must be exceeded by an individual before that person can be found to have engaged in "corrupt activity."

{¶ 16} There are already laws in place prohibiting the sale of illegal narcotics. Thus, the purpose of the Ohio RICO Act would not be furthered by accepting the conclusion that the threshold amount set forth in R.C. 2923.31(I)(2)(c) applies to the activities of the enterprise as a whole. The obvious intent of the General Assembly in enacting the RICO statutes was to reduce the influence and power of organized crime in the state. But construing Ohio's RICO Act in accordance with the analysis conducted by the appellate court below would punish someone who is not acting in an organized fashion and who would therefore seem to be beyond the reach of the Ohio RICO statutes through the operation of R.C. 2923.31(I)(2)(c).

{¶ 17} Although the above considerations illustrate the reasonableness of appellants' proposed construction of R.C. 2923.31(I)(2)(c), our resolution of this case does not rest on those concerns. Construing the ambiguity in favor of appellants requires us to reverse their convictions under the Ohio RICO Act. If this is not the outcome intended by the legislature, that body is certainly capable of amending R.C. 2923.31(I)(2)(c) to make its meaning clear for purposes of future prosecutions.

**Conclusion**

**{¶ 18}** Based upon the foregoing analysis, we conclude that in order to obtain a conviction for engaging in a pattern of corrupt activity, R.C. 2923.31(I)(2)(c) and 2923.32(A) must be construed so that the stated threshold amount applies to each individual, and not to the enterprise as a whole. The judgment of the court of appeals is reversed, and the causes are remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and causes remanded.

PFEIFER and LANZINGER, JJ., concur.

FRENCH, J., concurs in judgment only.

O'DONNELL and KENNEDY, JJ., concur in part and dissent in part.

O'CONNOR, C.J., dissents.

_____

**FRENCH, J., concurring in judgment only.**

**{¶ 19}** I concur with the decision to reverse the court of appeals' judgment, but not because I find the definition of "corrupt activity" in R.C. 2923.31(I)(2)(c) ambiguous. While there are a variety of different facts that could potentially satisfy this definition, there is only one plausible interpretation, and I vote to reverse because the court of appeals did not apply that interpretation in its sufficiency analysis.

**{¶ 20}** It is imprecise to frame the issue as whether R.C. 2923.31(I)(2)(c) applies to the "individual" defendant or the "enterprise as a whole," as if it can never apply to both. Of course, only an individual "person" can violate Ohio's RICO statute "through a pattern of corrupt activity," defined as "two or more incidents of corrupt activity * * * related to the affairs of the same enterprise." R.C. 2923.32(A)(1) and 2923.31(E). However, the individual may commit each incident of corrupt activity indirectly and with others, by "engaging in, *attempting*

to engage in, *conspiring* to engage in, or *soliciting*, *coercing*, or *intimidating another person* to engage in," any of several categories of predicate conduct. (Emphasis added.) R.C. 2923.31(I) (defining "[c]orrupt activity"). The trier of fact must always look to an individual defendant's conduct, but, depending on that defendant's level of participation, it may also be necessary to look to the conduct of other persons in the enterprise who acted with the defendant.

{¶ 21} R.C. 2923.31(I)(2)(c) is no exception. To commit an incident of corrupt activity under this definition, the individual defendant must participate (again, either directly or through attempt, solicitation, conspiracy, etc.) in "[c]onduct constituting * * * any combination of violations" listed in that division, and "the total proceeds of the combination of violations, payments made in the combination of violations, * * * or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations" must exceed the monetary threshold. R.C. 2923.31(I)(2)(c). This definition requires proof that (1) the defendant participated in a "combination of violations" listed in the division and (2) the "combination of violations" satisfied the monetary threshold. R.C. 2923.31(I)(2)(c).

{¶ 22} This does not mean that the statute requires proof that the defendant personally profited, or personally possessed contraband, in excess of the threshold (although either scenario would satisfy the statute). A defendant could still commit an incident of "corrupt activity" under R.C. 2923.31(I)(2)(c) even if he or she received little or no profit from the combination of violations if, for example, the defendant participated in the combination of violations with others in the enterprise and the "total proceeds" from that combination of violations—shared by everyone involved in the violations—exceeded the threshold. Either way, the individual defendant must play some role in the combination of violations, and that combination of violations (which could also involve other members of the enterprise) must satisfy the threshold.

**{¶ 23}** But here, the court of appeals found that Stevens and Bondurant each satisfied R.C. 2923.31(I)(2)(c) simply because police recovered over $35,000 from a member of the same enterprise, Rodger Cassell. Without looking to whether more than $500 of the $35,000 resulted from the combination of violations involving Stevens (eight counts of drug trafficking) and from the combination of violations involving Bondurant (six counts of drug trafficking), the court of appeals found sufficient evidence that the monetary threshold was met because "the enterprise as a whole profited more than $500."[2] 2012-Ohio-4912, 982 N.E.2d 1261, ¶ 23.

**{¶ 24}** I see no interpretation of R.C. 2923.31(I)(2)(c) to support this result. While the court of appeals was correct, in a sense, by stating that the statute can apply to the "collective enterprise profit," *id.* at ¶ 1, the collective profit must still result from a combination of violations *involving the defendant*. The individual defendant's "conduct" must connect to the "combination of violations," and the "combination of violations" must connect to the monetary threshold. R.C. 2923.31(I)(2)(c). Here, the evidence established that Stevens and Bondurant each committed a combination of violations with Cassell and the enterprise, but it does not follow that the combination of violations each participated in generated more than $500 of the money found in Cassell's possession. And, even if evidence linked the combination of violations of Stevens and Bondurant to amounts attributable to each in excess of $500, this would prove only a *single* incident of corrupt activity under R.C. 2923.31(I)(2)(c). A "pattern" requires "two or more." R.C. 2923.31(E).

---

2. Although serial numbers on some of the bills included in the $35,000 matched the "buy" money used in the drug-trafficking crimes involving Bondurant, the state never specified the exact amount at trial.

{¶ 25} Accordingly, I vote to reverse because the court of appeals incorrectly found sufficient evidence based on a misapplication of R.C. 2923.31(I)(2)(c), a statute that I believe to be clear and unambiguous.

{¶ 26} However, even if sufficient evidence did support Stevens's RICO conviction, I would reverse based on Stevens's second proposition of law for the reasons stated by Justice Kennedy in her separate opinion.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 27} Respectfully, I dissent from the lead opinion's conclusion that R.C. 2923.31(I)(2)(c) is ambiguous and would affirm the judgment of the court of appeals regarding the common issue raised by Zachary Bondurant's sole proposition of law and Jeffrey Stevens's first proposition of law.

{¶ 28} While the lead opinion does not address Stevens's second proposition of law regarding R.C. 2923.32(B)(1) (penalties for RICO violations), I would further hold that Stevens's first-degree-felony conviction for a RICO violation should be reversed, and I would remand to the trial court for issuance of the appropriate entry. The jury did not find that Stevens had committed a predicate act that is a first-, second-, or third-degree felony. Therefore, although I view his RICO conviction as valid, his conviction under RICO of a first-degree felony was unlawful, and only a second-degree-felony conviction is authorized under R.C. 2923.32(B). I accordingly concur with the majority result to the extent that a majority concludes that Stevens's first-degree-felony conviction for a RICO violation is not sustainable.

{¶ 29} This court accepted a total of three propositions of law from the appellants, and each requires a specific answer. Jeffrey Stevens advances the following two propositions of law:

1. R.C. § 2923.31(I)(2)(c) requires a threshold amount of $500.00 value of contraband sold. Where the statute is ambiguous as to whether the aggregation of the combined value of contraband sold is an aggregation of the individual's illicit activities or an aggregation of the enterprise's illicit activities, the trial and appellate courts erred in adopting an interpretation against the accused and his liberty interest by aggregating the enterprise as a whole rather than the individual.

2. The defendant was convicted of Engaging in a Pattern of Corrupt Activity under R.C. § 2923.32(A)(1) and his predicate acts were all fifth degree felonies. The statute is ambiguous as to whether the predicate acts are the individual's acts or any other actor in the enterprise. The statute should be interpreted as to the individual, not the enterprise and thus where a jury makes no finding of a felony predicate act of the first, second, or third degree, the defendant should be sentenced as a second degree felony rather than a first degree felony under [R.C.] 2923.32(B).

{¶ 30} Zachary Bondurant advances one proposition of law:

A defendant may only be convicted of engaging in a pattern of "corrupt activity" as defined in R.C. 2923.31(I)(2)(c) if the value of the contraband for that defendant's activities is equal to or exceeds the threshold amount set forth in the statute.

{¶ 31} While presented differently, Bondurant's sole proposition of law and Stevens's first proposition of law pertain to the same inquiry: whether

through applying the rule of lenity or applying the statute's plain meaning, R.C. 2923.31(I)(2)(c) prohibits convicting them for a RICO violation because neither personally engaged in activities yielding proceeds that exceeded the former threshold amount of $500 set forth in that statute. The state asserts, and the lower courts held, that under R.C. 2923.31(I)(2)(c), the threshold amount applies to the enterprise and not to an individual involved in the enterprise.

### Background

**{¶ 32}** At the joint trial of Stevens and Bondurant, the testimony of fellow participants in the corrupt enterprise established that those other participants had been convicted of second- and third-degree-felony drug offenses for their roles in the enterprise. A jury found Stevens and Bondurant guilty of dozens of violations for possessing and trafficking in drugs. After merging the possession and trafficking counts, the trial court sentenced Stevens on five counts of fifth-degree trafficking in drugs. After merging counts, the court sentenced Bondurant on three counts of fourth-degree-felony acts of trafficking in drugs in a school zone. The trafficking convictions were all pursuant to R.C. 2925.03. In addition to the drug convictions, the court sentenced both Bondurant and Stevens on one first-degree-felony RICO count.

### R.C. 2923.31(I)(2)(c) Is Not Ambiguous

**{¶ 33}** Regarding Bondurant's sole proposition of law and the first proposition of law of Stevens, I would hold that because the RICO statutory scheme targets the corrupt enterprise and not the individuals involved in it, the aggregated proceeds of $35,000 from the group's corrupt activity are attributable to appellants and exceed the former threshold of R.C. 2923.31(I)(2)(c). That statute does not declare that each individual defendant must participate in activities involving proceeds of more than $500.

**{¶ 34}** We begin with R.C. 2923.32(A)(1): "No person employed by, or associated with, any *enterprise* shall *conduct or participate in, directly or*

*indirectly*, the affairs of the enterprise through a *pattern of corrupt activity * * *.*" (Emphasis added.)  The statute is sweeping.  We next turn to the definitions.

**{¶ 35}** R.C. 2923.31(C) defines "enterprise" as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons *associated in fact although not a legal entity*."  (Emphasis added.)

**{¶ 36}** Next is the definition of "pattern of corrupt activity."  R.C. 2923.31(E) defines this term as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are *related to the affairs of the same enterprise*, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."  (Emphasis added.)  R.C. 2923.31(E) later provides:  "For the purposes of the criminal penalties that may be imposed pursuant to *section 2923.32 of the Revised Code*, at least one of the incidents forming the pattern shall constitute a felony under the laws of this state * * *."  (Emphasis added.)

**{¶ 37}** Finally comes the language central to this case.  R.C. 2923.31(I) defines "corrupt activity" as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" a wide range of certain later-enumerated predicate offenses.  For purposes here, it is sufficient to recognize that trafficking in drugs pursuant to R.C. 2925.03 is one of those enumerated predicate offenses.  R.C. 2923.31(I)(2)(c) formerly provided, as applicable to this case:

> Any violation of section * * * 2925.03 * * * of the Revised Code, [or] any violation of section 2925.11 of the Revised Code that is a felony of the first, second, third, or fourth degree and that occurs on or after July 1, 1996, * * * when the proceeds of the

14

violation, the payments made in the violation, the amount of a claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, *or* the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars, *or any combination of violations described in division (I)(2)(c) of this section when the total proceeds of the combination of violations, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds five hundred dollars*.

(Emphasis added.)

{¶ 38} The interpretation that the lead opinion gives R.C. 2923.31(I)(2)(c)—that the General Assembly's use of "total" and "combination" applies to each individual and not the enterprise—frustrates the purpose of that statute, which is to target the collective profits of group crime. In this case, that total exceeded $35,000, well over the $500 threshold for RICO liability of former R.C. 2923.31(I)(2)(c). In context, R.C. 2923.31(I)(2)(c) is not ambiguous.

{¶ 39} The rule of lenity does not require reversal. "Since context gives meaning," we cannot say that the statute is ambiguous until we consider the language as it is used in the statute rather than in isolation. *United States v. Santos*, 553 U.S. 507, 512, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). The lead opinion here is "quick to pronounce the [language] hopelessly ambiguous" and ignores that in doing so, it frustrates the General Assembly's "intent and maim[s] a statute that was enacted as an important defense against organized criminal enterprises." *Id*. at 531 (Alito, J., dissenting). We must remember that the rule of

lenity applies "at the end of the process * * *, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan v. United States*, 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961).

{¶ 40} We have already applied the RICO statute based on its context and purpose, ruling unanimously that violating RICO is a strict-liability offense. *State v. Schlosser*, 79 Ohio St.3d 329, 681 N.E.2d 911 (1997), syllabus. We based our holding on "the plain language of the statute, the legislative intent and public policy considerations behind the statute, and the varying culpable mental states necessary for the predicate offenses." *Id*. at 331-332. We observed that the "RICO statute was designed to impose cumulative liability for the criminal enterprise." *Id*. at 335. The focus of the statute remains on the enterprise itself, not the individuals associated with it. *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 14.

{¶ 41} The part of former R.C. 2923.31(I)(2)(c) at issue defines corrupt activity as including

> *any combination of violations* described in division (I)(2)(c) of this section *when the total proceeds of the combination of violations*, payments made *in the combination* of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the *combination of violations*, or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds five hundred dollars.

(Emphasis added.) With this statute, the General Assembly straightforwardly "impose[d] cumulative liability for the criminal enterprise," *Schlosser* at 335, when "total proceeds of the combination of violations" produced more than $500.

**{¶ 42}** "Total" means "viewed as an entity." *Webster's Third New International Dictionary* 2414 (1986). The proceeds that are attributable to these defendants in the enterprise comprise a portion of the proceeds of the combination of violations, not the total. Total proceeds were more than $35,000. Therefore, the statute does not require each defendant to have derived more than $500 in proceeds from the corrupt activity. It requires merely that the combined efforts of the criminal enterprise yielded more than $500 in proceeds. Former R.C. 2923.31(I)(2)(c) is not ambiguous, and the trial court properly found sufficient evidence to enter judgments of conviction under RICO for each defendant.

**{¶ 43}** Because the statute is not ambiguous, R.C. 2901.04(A), the rule of lenity, does not apply. "Statutory interpretation involves an examination of the words used by the legislature in a statute, and when the General Assembly has *plainly and unambiguously conveyed its legislative intent*, there is nothing for a court to interpret or construe, and therefore, the court applies the law as written." (Emphasis added.) *State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496, syllabus. Even the lead opinion does not dispute the legislature's intent in enacting the RICO statute. Therefore, the court of appeals' decision affirming that the defendants were properly convicted under RICO should be upheld.

**{¶ 44}** Even if ambiguity could be divined within former R.C. 2923.31(I)(2)(c), we should not necessarily default to the interpretation proposed by the defendants. "[W]e must be mindful that, although criminal statutes are strictly construed against the state, R.C. 2901.04(A), they should not be given an artificially narrow interpretation that would defeat the apparent legislative intent." *State v. White,* 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 20, citing *In re Clemons*, 168 Ohio St. 83, 87-88, 151 N.E.2d 553 (1958). The defendants' position is not warranted by the language of R.C. 2923.31(I)(2)(c) and defeats the purpose of the RICO statute. I would therefore affirm the appellate court's

conclusion that Bondurant and Stevens met the statutory requirements to be convicted of RICO violations.

**Stevens's First-Degree-Felony Conviction Under R.C. 2923.32(B)(1)**

{¶ 45} Although Stevens was properly convicted of a RICO violation, his second proposition of law compels a holding in his favor. I would reverse Stevens's first-degree-felony conviction, as R.C. 2923.32(B)(1) permits only a second-degree-felony conviction in this case.

{¶ 46} R.C. 2923.32(B)(1) states:

> Whoever violates this section is guilty of engaging in a pattern of corrupt activity. Except as otherwise provided in this division, *engaging in corrupt activity is a felony of the second degree.* Except as otherwise provided in this division, *if at least one of the incidents of corrupt activity is a felony of the first, second, or third degree, * * * engaging in a pattern of corrupt activity is a felony of the first degree.*

(Emphasis added.)

{¶ 47} The state asserts that the statute is worded so that an accused may be convicted of a first-degree felony so long as "one of the incidents of corrupt activity" committed by anyone in the enterprise is "a felony of the first, second, or third degree." For support, the state cites R.C. 2923.03(F) (a subsection of the complicity statute), which allows a person who violates "this section" to be "prosecuted and punished as if he were a principal offender."

{¶ 48} The state's position concerning the complicity statute is unpersuasive. Stevens was not convicted under R.C. 2923.03(F), and R.C. 2923.32(B)(1) has no comparable provision. R.C. 2923.32(B)(1) looks only to the particular defendant's "incidents of corrupt activity," not to independent

18

incidents of corrupt activity committed by someone who is merely in the same enterprise. Any other reading of R.C. 2923.32(B)(1) is unwarranted.

{¶ 49} R.C. 2923.32(B)(1) sets forth specific felony enhancements when felons have violated predicate offenses under the RICO statute. It specifically elevates fourth- and fifth-degree-felony predicate offenses to second-degree-felony status. Attributing first-degree-felony status to fifth-degree predicate felonies (as Stevens was convicted of here) based on the actions of higher-level felons in the enterprise ignores the General Assembly's explicit declaration that unless excepted, "engaging in corrupt activity is a felony of the second degree." R.C. 2923.32(B)(1). Pursuant to the express and unambiguous language of the statute, because none of Stevens's predicate offenses constituted a first-, second-, or third-degree felony, he cannot be convicted of a first-degree felony.

{¶ 50} Therefore, I concur in the majority result to the extent that a majority reverses Stevens's conviction for a first-degree-felony RICO violation, but I would remand the case to the trial court for entry of judgment of conviction on a second-degree felony for that violation.

O'DONNELL, J., concurs in the foregoing opinion.

———————————

**O'CONNOR, C.J., dissenting.**

{¶ 51} We are not presented with an 18-year-old high school senior who was arrested for selling a dime bag of marijuana and prosecuted for a RICO violation based on some tenuous tie between his product and a multibillion-dollar Colombian drug cartel.[3] Quite the contrary.

---

3. Any intimation by the lead opinion that the sweep of Ohio's RICO statutory scheme is so broad that it will lead to unfettered prosecutions of naïve adolescents is unsupported. If the legislative scheme permitted a genuine constitutional affront of that type based on such an attenuated theory for engaging in a pattern of corrupt activity, this court would undoubtedly remedy it. *See State v. Young*, 62 Ohio St.2d 370, 406 N.E.2d 499 (1980), syllabus (holding Ohio's predecessor RICO statute unconstitutional, on void-for-vagueness grounds).

**{¶ 52}** We are presented with two men, each between 30 and 40 years old, who repeatedly sold heroin, crack cocaine, and powder cocaine to a number of people in a number of counties over a number of months.

**{¶ 53}** As the appellate court recognized, the state's theory in this case is that Jeffrey Stevens was the right-hand man, and Zachary Bondurant was the left-hand man, of Rodger Cassell, the purported leader of their criminal enterprise. *State v. Bondurant*, 2012-Ohio-4912, 982 N.E.2d 1261, ¶ 7 (4th Dist.). And that enterprise trafficked drugs in school zones and impoverished areas, while stashing away tens of thousands of dollars in Cassell's vehicles.

**{¶ 54}** The suggestion that Bondurant and Stevens are anything less than professional purveyors of some of the most destructive drugs in society is, at best, disingenuous.

**{¶ 55}** But my quarrel is not simply over the lead opinion's mischaracterization of the nature of this appeal. It is with the lead opinion's improper analysis of the criminal statute at issue, R.C. 2923.31(I)(2)(c), and its conclusion that the statute is ambiguous and, under the rule of lenity, that it must be construed in favor of the appellants.

**{¶ 56}** The statute is unambiguous, both in wording and in context. The convictions of Bondurant and Stevens should be affirmed.

### *Analysis*

**{¶ 57}** The Organized Crime Control Act of 1970, Pub.L. No. 91-452, 84 Stat. 941, codified as 18 U.S.C. 1961 et seq., was enacted after Congress found that organized crime in the United States, including drug trafficking, was " 'a highly sophisticated, diversified, and widespread activity.' " *State v. Schlosser*, 79 Ohio St.3d 329, 332, 681 N.E.2d 911 (1997), quoting the Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922, reprinted in 1970 U.S.Code Cong. & Adm. News at 1073. The federal law, known as the Racketeer Influenced and Corrupt Organizations Act ("RICO"), was enacted to

" 'seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.' " *Id.*

{¶ 58} To effectuate its goals, the law's sponsors eschewed precise wording. Instead, they used commodious language to broadly encompass crimes committed by an enterprise. *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 246, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). And we must be mindful that Congress provided specifically that the federal RICO statute be liberally construed to effectuate its remedial purposes. *United States v. Sutton*, 642 F.2d 1001, 1008 (6th Cir.1980) (en banc), citing Pub.L. No. 91-452, Title IX, Section 904(a), 84 Stat. 947 (1970).

{¶ 59} Ohio, like many states, enacted its own version of RICO through the adoption of R.C. 2923.31 et seq. R.C. 2923.31 and 2923.32 are both a part of what is commonly referred to as Ohio's RICO statute. *See State v. Theisler*, 11th Dist. Trumbull No. 2005-T-0106, 2007-Ohio-213, ¶ 30; *State v. Thrower*, 62 Ohio App.3d 359, 369, 575 N.E.2d 863 (9th Dist.1989). We look to federal law to interpret Ohio's RICO statute. *U.S. Demolition & Contracting, Inc. v. O'Rourke Constr. Co.*, 94 Ohio App.3d 75, 83, 640 N.E.2d 235 (8th Dist.1994).

{¶ 60} R.C. 2923.32(A)(1) provides, "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." In the version of R.C. 2923.31 in effect at the times relevant here, R.C. 2923.31(I)(2)(c) defined "corrupt activity" as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * conduct constituting" certain predicate offenses

when the proceeds of the violation, the payments made in the violation, the amount of a claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars [now one thousand dollars], *or any combination of violations* described in division (I)(2)(c) of this section *when the total proceeds of the combination of violations*, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property illegally possessed, sold, or purchased *in the combination of violations exceeds five hundred dollars* [now one thousand dollars].

(Emphasis added.)

**{¶ 61}** At the time of its enactment, Ohio's RICO Act was described by one of its sponsors as " 'the toughest and most comprehensive [RICO] Act in the nation.' " *Schlosser*, 79 Ohio St.3d at 333, 681 N.E.2d 911, quoting 57 Ohio Report No. 117, Gongwer News Serv. 3 (June 18, 1985). It is nonsensical to think that a statute that was designed to be one of the most effective anti-crime laws in existence would use limiting terms, rather than expansive ones, in defining and proscribing criminal conduct.

**{¶ 62}** There is no doubt that criminal statutes must be strictly construed against the state in certain situations. R.C. 2901.04(A). But the rule of lenity is a statutory-construction device that "only serves as an aid for resolving an ambiguity; it is not used to beget one." *United States v. Turkette*, 452 U.S. 576, 587, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), fn. 10. Criminal statutes should not

be given an artificially narrow interpretation that would defeat the General Assembly's apparent intent in enacting the statute. *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 20, citing *In re Clemons*, 168 Ohio St. 83, 87-88, 151 N.E.2d 553 (1958). The lead opinion does just that.

{¶ 63} As we recently reaffirmed, unanimously, Ohio's RICO statute is focused on the criminal enterprise, not on the individuals that comprise the enterprise. *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 14. The statutory language at issue here plainly and unambiguously reflects that intent.

{¶ 64} "Combination" means many things, and its definitions are clear and relevant here: "the act of combining or the state of being combined," "a number of things combined," "something formed by combining," "an alliance of persons or parties," and "a group thus formed." *The Random House Dictionary of the English Language* 408 (2d Ed.1987). *See also Rush Beverage Co., Inc. v. S. Beach Beverage Co., Inc*., N.D.Ill. No. 01 C 5684, 2002 WL 31749188, *8 (Dec. 6, 2002), quoting *Webster's Third New International Dictionary* 452 (1986) (holding that the phrase "in combination with" is not ambiguous and not susceptible of more than one meaning, in that "combination" is defined as " 'the result or product of combining[;] a union or aggregate made by combining one thing with another,' " and in that "combine" is defined as " 'to bring into close relationship' "). And *Black's Law Dictionary* provides a succinct and particularly apropos definition for purposes of this appeal: a "combination" means "[a]n alliance of individuals or corporations working together to accomplish a common (usu. economic) goal." *Id.* at 302 (9th Ed.2009). The General Assembly's repeated use of the word "combination" clearly and unequivocally means a combination of violations, which in this case is the combination of the violations of Ohio's drug laws committed by all those who were involved in the criminal enterprise.

**{¶ 65}** The lead opinion's conclusion that the General Assembly's use of the term "combination" in R.C. 2923.31(I)(2)(c) is ambiguous lacks any legal authority and strains credulity, common sense, and middle-school vocabulary lessons. The only reported case in Ohio to suggest that any of the provisions of R.C. 2923.31(I) (including its use of the word "combination") is ambiguous is the appellate court's decision in the case before us. Not a single court has adopted its holding on ambiguity since it was issued.

**{¶ 66}** As Justice White wrote in *Turkette*:

"The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan v. United States*, 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961) (footnote omitted). There being no ambiguity in the RICO provisions at issue here, the rule of lenity does not come into play. See *United States v. Moore*, 423 U.S. 122, 145, 96 S.Ct. 335, 346, 46 L.Ed.2d 333 (1975), quoting *United States v. Brown*, 333 U.S. 18, 25–26, 68 S.Ct. 376, 379–380, 92 L.Ed. 442 (1948) (" 'The canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. * * * Nor does it demand that a statute be given the "narrowest meaning"; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers' "); see also *Lewis v. United States*, 445 U.S. 55, 60–61, 100 S.Ct. 915, 918–919, 63 L.Ed.2d 198 (1980).

452 U.S. at 587, 101 S.Ct. 2524, 69 L.Ed.2d 246, fn. 10.

**{¶ 67}** The lead opinion's analysis corrupts the court's teachings on the rule of lenity, as well as the context of Ohio's RICO statute and the plain meaning of the words used in the statute. And the lead opinion's conclusion gives rise to an undue, unfair, and unwelcome ambiguity in a statute that affords important protections to Ohioans.

**{¶ 68}** I strongly dissent.

_____

Anneka P. Collins, Highland County Prosecuting Attorney, for appellee.

Bryan Scott Hicks, for appellant Jeffrey Stevens in case No. 2012-2003.

Timothy Young, Ohio Public Defender, and E. Kelly Mihocik, Assistant Public Defender, for appellant Zachary Bondurant in case No. 2012-2006.

_____